The STATE of Ohio, Appellant,

v.

BRYANT, Appellee.

[Cite as *State v. Bryant* (2000), 138 Ohio App.3d 343.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–990635 and C–990636.

Decided June 30, 2000.

*Terrence R. Cosgrove*, City Prosecutor, and *Michael J. Harmon*, Senior Assistant City Prosecutor, Cincinnati, for appellant.

*J. Robert Andrews* and Schuh & Goldberg, LLP, Cincinnati, for appellee.

HILDEBRANDT, Presiding Judge.

Plaintiff-appellant, the state of Ohio, appeals the judgment of the Hamilton County Municipal Court granting the motion to suppress filed by defendant-appellee, Gregory S. Bryant, in a prosecution for operating a vehicle while under the influence of alcohol pursuant to R.C. 4511.19(A)(1) and for operating a vehicle with a prohibited breath-alcohol concentration pursuant to R.C. 4511.19(A)(3).

During the early morning hours of March 17, 1999, Cincinnati police officer Ryan Jones received a radio dispatch that Newport, Kentucky police officers were pursuing a motorist who was fleeing from Kentucky to Cincinnati across the Interstate 471 bridge. Officer Jones arrived at the Ohio side of the bridge and observed Bryant sitting in his automobile with Newport officers parked behind him in their cruisers, with emergency lights activated.[1]

The Newport officers informed Jones that they had pursued Bryant for approximately six-tenths of a mile across the bridge and that they believed that Bryant was attempting to elude them by entering Ohio. The Newport officers further reported that Bryant's driving was erratic and that he had almost collided with another automobile.

Officer Jones approached Bryant as he sat in his automobile. Officer Jones noted the odor of an alcoholic beverage, and he asked Bryant if he had been drinking. Bryant responded that he had had "a few beers." Officer Jones asked Bryant to perform some preliminary psychomotor tests while seated in his car.

---

1. The parties stipulated that this location was in Hamilton County, Ohio.

Based upon Bryant's performance of those tests, Officer Jones requested that Bryant step out of his vehicle. At that time, Officer Jones administered the horizontal-gaze-nystagmus test and observed three deviations in each of Bryant's eyes.[2] Based upon the results of the nystagmus test, Officer Jones placed Bryant under arrest for violating R.C. 4511.19.

Bryant moved to suppress the evidence against him, challenging the propriety of the traffic stop by the Newport officers, as well as the validity of the arrest by Officer Jones. The trial court granted the motion on the basis that the state had failed to demonstrate the reasonableness of the traffic stop. In a single assignment of error, the state contends that the trial court erred by granting Bryant's motion to suppress. We agree.

The Ohio Supreme Court has held that police may rely on information broadcast over the police radio for reasonable suspicion to make an investigatory stop or for probable cause to make an arrest.[3] Where an officer making an investigatory stop relies solely on such a dispatch, the state must demonstrate that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.[4]

As noted above, Officer Jones arrived at the Cincinnati side of the I-471 bridge in response to a radio broadcast that Newport police officers were pursuing a motorist who had refused to stop. Based upon the information that he received in the broadcast concerning Bryant's flight from the Newport police, Officer Jones possessed reasonable suspicion to stop Bryant's vehicle. Although the underlying facts giving rise to the Newport officers' initial pursuit of Bryant were not broadcast, the very circumstance of flight from the officers gave rise to reasonable suspicion that criminal activity had occurred or was occurring. In other words, Bryant's flight itself constituted "the facts precipitating the dispatch" within the meaning of *Weisner*. The fact that the Newport officers had stopped Bryant before Officer Jones arrived on the scene does not affect our holding, since Jones himself could have properly stopped Bryant on the basis of the broadcast.

---

2. Officer Jones did not have Bryant perform any balancing tests while out of his automobile because it was parked on an uneven section of the roadway.

3. *State v. Fultz* (1968), 13 Ohio St.2d 79, 42 O.O.2d 259, 234 N.E.2d 593; *State v. Droste* (1998), 83 Ohio St.3d 36, 40, 697 N.E.2d 620, 623, fn. 3, certiorari denied (1999), 526 U.S. 1145, 119 S.Ct. 2021, 143 L.Ed.2d 1032. See, also, *State v. Marsh* (Sept. 3, 1999), Hamilton App Nos. C–980788 and C–980789, unreported, 1999 WL 682622.

4. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 298, 720 N.E.2d 507, 511.

 It is further clear that Jones was entitled to prolong his investigation on the basis of the information that he personally received from the Newport officers at the site of the detention. As a result of that investigation, Jones garnered probable cause to arrest Bryant for violating R.C. 4511.19. Bryant's demeanor, the strong smell of an alcoholic beverage about his person, and his failure to successfully perform the field sobriety tests provided an ample basis for his arrest. Accordingly, the judgment of the lower court is reversed, and this cause is remanded for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

WINKLER, J., concurs.

PAINTER, J., dissents.

PAINTER, Judge, dissenting.

We should affirm the trial court's decision to grant Bryant's motion to suppress. The trial court correctly determined that the state had failed to meet its burden. The state had the burden to prove that the Kentucky police officers had reasonable suspicion that Bryant had engaged in criminal activity in order to justify an investigative stop of his car.

It is uncontroverted that the Kentucky officers stopped Bryant's automobile in Ohio. No Kentucky officer testified at the suppression hearing as to what facts justified the initial stop. Instead, the state relied on the testimony of Officer Jones, an Ohio officer who arrived at the scene after Bryant's car had been stopped. Officer Jones testified that he arrived as the result of a police broadcast, continued Bryant's detention, and subsequently arrested him.

According to Officer Jones's testimony, he received a radio dispatch stating only that the Kentucky police were following a car across a bridge leading to Ohio and that the driver refused to stop. At the hearing, the trial court allowed Officer Jones to testify as to what the Kentucky police told him about their observations of Bryant's erratic driving in Kentucky solely for the purpose of explaining why Officer Jones did what he did at the scene. The testimony was not admitted to prove why the Kentucky police had stopped Bryant initially. The trial court correctly believed that the admission of Jones's testimony for that purpose would have violated Bryant's right to cross-examination. Only the Kentucky police officers observed Bryant's driving and only the Kentucky officers could have been cross-examined about their observations.

The state essentially argues that we should treat this case as if Officer Jones had made the initial stop. And the state contends that Jones could have relied on

the police broadcast as the basis for the requisite reasonable suspicion to justify the investigative stop. But, obviously, Officer Jones made no stop, because Bryant was pulled over by the Kentucky officers. But if we assume *arguendo* that Jones made the initial stop, and that it was based on the dispatch, then the state still failed to meet its burden of proving that the stop was constitutionally valid.

The syllabus language of *Maumee v. Weisner*[5] holds that "[w]here an officer making an investigative stop relies solely upon a [radio] dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." There is no question here that Officer Jones relied on the Kentucky officers' dispatch. The question we must answer is whether the state demonstrated that the *dispatching officers* "possessed reasonable suspicion to make the stop."[6] To do so, the state had to place into evidence the facts precipitating the dispatch.

The majority evidently believes that the dispatched information that Bryant was eluding the Kentucky officers was sufficient, without more, to constitute the reasonable suspicion necessary to stop his car. This conclusion flies directly in the face of the Ohio Supreme Court's holding in *Maumee v. Weisner.* Where the reasonable suspicion necessary to make an investigative stop is imputed via a dispatch to an officer who has not personally made any observations of criminal activity, the state must prove that the facts that precipitated the dispatch provided reasonable suspicion to justify the stop. In this case, the facts precipitating the dispatch necessarily involved what Bryant had been doing to cause the Kentucky police to chase him—not the chase itself.

Because the state failed to provide any evidence of the Kentucky officers' reasonable suspicions to warrant the stop of Bryant's vehicle, *Maumee v. Weisner* mandates that we affirm the trial court's judgment.

---

**5.** *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 720 N.E.2d 507, paragraph one of the syllabus.

**6.** *Id.* at 297, 720 N.E.2d at 511.