[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] The appeals have been sua sponte consolidated under appellate number C-030001.
 JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} On July 18, 2002, there was a hit-and-run automobile accident on Main Street in Cincinnati, Ohio. A radio broadcast was sent out for the police to stop a gray Mercedes that was involved in the accident. The broadcast included the car's description, location, and license-plate number. Two officers were on Main Street at the time of the broadcast, and they saw a vehicle fitting the description leaving the area where the accident had occurred. They observed defendant-appellee Jeffrey Eysoldt driving the vehicle. The officers pulled over Eysoldt and observed a paint scrape on his car. The officers then approached the vehicle and observed Eysoldt stuffing gum into his mouth. They smelled a strong odor of alcohol coming from Eysoldt. The officers testified that Eysoldt had slurred speech and watery and bloodshot eyes, and that he refused to step out of the car. Eysoldt was ordered three or four times to get out, but he continued to refuse. Eventually, Eysoldt had to be removed from the car. The officers testified that, in their opinion, Eysoldt was under the influence of alcohol. He was placed under arrest for driving under the influence ("DUI"), resisting arrest, possession of illegal drug paraphernalia, and minor-misdemeanor drug abuse.
 {¶ 3} On October 30, 2002, a suppression hearing was held. At the hearing, the defense conceded that there was reasonable suspicion to stop Eysoldt based on the radio dispatch. According to the stipulation, the motion to suppress was to proceed only on the issue of whether there was probable cause to arrest Eysoldt for DUI. Throughout the hearing, the defense made it clear that it did not want testimony admitted on the issue of reasonable grounds for the initial stop.
 {¶ 4} The trial court granted the motion to suppress, ruling both that there was a lack of probable cause to arrest for DUI that there was no reasonable suspicion to stop Eysoldt. The state now brings forth two assignments of error, both of which we find to be well taken.
 {¶ 5} In the second assignment of error, the state alleges that the trial court erred in finding that there was no reasonable suspicion to stop the Eysoldt. The record clearly shows that, at the suppression hearing, Eysoldt stipulated that the police officers possessed a reasonable suspicion to stop him without a warrant. In view of that, there was no need for the state to put on evidence relating to the initial stop. As a result, it was improper for the trial court to hold the state accountable for not having presented sufficient evidence on that issue.
 {¶ 6} At the hearing before this court, Eysoldt again conceded that he was not challenging whether the police officers possessed a reasonable suspicion to stop him. But without his concession, there is enough evidence in the record to establish a reasonable suspicion to stop. A radio dispatch may be sufficient to justify a traffic stop where the state demonstrates that "the facts precipitating the dispatch justified a reasonable suspicion of criminal activity."[2] The record is replete with evidence that the police officers stopped Eysoldt after observing him drive up Main Street in a direction away from the hit-and-run accident. Eysoldt's car and license plate matched the radio-dispatch description. As a result, we hold that, even without the stipulation, the trial court could have found that there were sufficient grounds to stop Eysoldt's car. Accordingly, we sustain the second assignment of error.
 {¶ 7} In its first assignment of error, the state argues that the trial court erred in finding that there was no probable cause to arrest. We agree.
 {¶ 8} The test for determining probable cause is whether, at the time of the arrest, the facts and circumstances within the officer's knowledge were sufficient for a prudent man to believe that the defendant had committed the offence in question.[3] In this case, sufficient facts were presented to establish probable cause. Eysoldt had just been involved in an automobile accident and was putting gum into his mouth as the officers approached the car. The officers testified there was a strong odor of alcohol coming from Eysoldt, that his speech was slurred, and that his eyes were watery. According to the officers' testimony, Eysoldt refused to get out of the car and had to be physically removed. This court has held many times that facts such as these are more than sufficient to justify an arrest for DUI.[4] Thus, we hold that the facts in this case were reasonably trustworthy and satisfied the probable-cause standard.
 {¶ 9} While there were no field sobriety tests administered and no admission of drinking alcohol by Eysoldt, these are only two factors among many that may bear upon the validity of an arrest. Further, the refusal to take field sobriety tests or the refusal to admit to drinking does not exempt a person from DUI under R.C. 4511.19(A)(1). R.C.4511.19(A)(1) provides that no person shall operate a vehicle while under the influence of alcohol. Under this section, there is no requirement that the person have a certain concentration of alcohol. Thus, we hold that there was sufficient evident to establish probable cause and that the trial court erred in granting the motion to suppress. Accordingly, we sustain the first assignment of error.
 {¶ 10} In sum, having held that there was a reasonable suspicion to stop Eysoldt and probable cause to arrest him, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this judgment entry.
 {¶ 11} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Gorman and Winkler, JJ.
[2] State v. Bryant (2000), 138 Ohio App.3d 343, 345,741 N.E.2d 255.
[3] See Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223; State v.Heston (1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376.
[4] See, e.g., State v. Kromski (1995), 102 Ohio App.3d 621, 623-624,657 N.E.2d 796.