DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Municipal Court judgment of conviction and sentence. The trial court found Cynthia Orihel, defendant below and appellant herein, guilty of driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1).[1]
Appellant assigns the following errors for review:
FIRST ASSIGNMENT OF ERROR:
 "UNDER STATE V. SPILLERS, THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING THE MOTION TO SUPPRESS EVIDENCE BECAUSE THE STATE OF OHIO FAILED TO PROVE THERE WAS A REASONABLE AND ARTICULABLE SUSPICION TO ADMINISTER FIELD SOBRIETY TESTS."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED APPELLANT'S TIMELY OBJECTIONS AS TO A LACK OF A PROPER FOUNDATION AND PERMITTED THE OFFICER TO TESTIFY TO THE RESULTS OF THE HORIZONTAL GAZE NYSTAGMUS TEST."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN ALLOWING THE OFFICER TO TESTIFY AS TO THE LIKELIHOOD APPELLANT WOULD TEST OVER THE LEGAL LIMIT BASED UPON WHAT HE FELT HER RESULTS OF THE FIELD SOBRIETY TESTS WERE."
FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S OBJECTIONS TO TESTIMONY PERTAINING TO THE RESULTS OF THE H.G.N. FIELD SOBRIETY TEST, AS THE ARRESTING OFFICER FAILED TO ADMINISTER THE TEST IN STRICT COMPLIANCE WITH STANDARDS ADOPTED BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION."
FIFTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF THE RESULTS OF THE WALK — AND — TURN TESTS AS IT WAS NOT ADMINISTERED IN STRICT COMPLIANCE WITH N.H.T.S.A. STANDARDS."
SIXTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE GIVEN THE FACT THAT ALL EVIDENCE WAS OBTAINED AS A RESULT OF AN EXTRA-TERRITORIAL ARREST AND GOVERNED BY THE HOT-PURSUIT EXCEPTION."
Our review of the record reveals the following facts pertinent to the instant case. On February 10, 2001, at approximately 2:29 a.m., Ohio University Police Officer Mike Trout, while seated in his police cruiser parked near the Ohio University's Research Technology Building, observed appellant turning onto President's Street from South Court Street. Both streets are one-way streets and appellant was driving the wrong way down both one-way streets. The officer decided to conduct a traffic stop.
When Officer Trout approached the appellant's vehicle's driver's side window, he detected an odor of alcohol emanating from the vehicle. Officer Trout also observed four passengers inside the vehicle. The officer asked appellant for her driver's license and proof of insurance. Appellant was apparently unable to immediately produce her driver's license. She checked various places inside her vehicle, pulled her wallet out of her purse, checked her wallet and her purse for her driver's license, but could not locate it. She then checked her pockets but she still could not find her license. Appellant then looked again in her purse, then went back to her pockets, and finally found her license in her back pocket.
Officer Trout asked appellant to step out of her car. Appellant complied with the officer's request and, when she stepped out of the vehicle, she "almost fell." Officer Trout explained that "she just kind of lost her balance like she was almost ready to fall over but got her feet back underneath her to where she could stand up."
The officer and appellant then walked toward the rear of the vehicle. As appellant walked toward the rear of the vehicle, "she fell into the vehicle and kind of used it for balance as she walked around * * * to the rear of the vehicle." The officer stated that he has seen individuals with a lack of coordination before, "[b]ut for individuals that uses [sic] a vehicle for balance or almost fall over[,] those are more extreme cases * * * of persons being intoxicated."
When the two approached the rear of the vehicle, the officer detected "a strong odor of an intoxicating beverage." The officer stated that the odor originated from appellant's breath and that the odor was more pronounced when she was speaking to him. The officer explained that he did not notice the smell until reaching the rear of the vehicle because of the exhaust fumes from passing traffic.
Officer Trout then requested appellant to perform some field sobriety tests. Officer Trout first attempted to administer the Horizontal Gaze and Nystagmus Skill ("HGN"). The officer advised appellant that he wanted her to follow the tip of a pen. The officer held the pen approximately eighteen to twenty-four inches away from her face, slightly above eye level. Appellant "could not follow the pen," could not keep her head still, and would not face forward. The officer attempted to perform the test three of four times. Officer Trout eventually determined that appellant was unable to comply with the instructions.
Officer Trout next attempted to administer the "one-leg stand" test. The officer stated that appellant tried to perform the skill, but "each time she would raise her foot up off the ground * * * she would not be able to maintain her balance and she would have to put her foot back down." The officer explained that appellant never reached the point where she would begin to count. Appellant tried several times to perform the test until Officer Trout decided that it was unsafe for her to try to perform the test.
Next, the officer asked appellant to perform the "walk — and — turn" test. Officer Trout stated that appellant was unable to comply with the instructions. He stated that appellant kept stepping off the imaginary line. The officer explained that "[w]hen she got to step five she stepped off the line to the point that [he] thought that she was going to fall, and [he] caught her because [he] thought she was going to go to the ground." The officer then decided that appellant was intoxicated and that she should not be driving. He placed her under arrest.
Appellant subsequently was charged with operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1), and driving the wrong way on a one-way street, in violation of R.C. 4511.32. Appellant entered not guilty pleas.
On April 16, 2001, appellant filed a motion to suppress evidence. Appellant argued, inter alia, that: (1) Officer Trout lacked reasonable suspicion that she was driving while intoxicated and thus lacked reasonable suspicion to continue to detain her to administer field sobriety tests; and (2) her arrest was invalid because Officer Trout was outside his jurisdiction when he conducted the stop. Appellant further argued that probable cause to arrest did not exist. Appellant asserted that Officer Trout failed to strictly comply with the established standards for conducting field sobriety tests and that, pursuant to Statev. Homan (1999), 89 Ohio St.3d 421, 732 N.E.2d 952, evidence concerning the results of the test must be excluded from the probable cause analysis. Appellant contended that without evidence concerning appellant's performance of the field sobriety tests, probable cause to arrest her for driving while under the influence did not exist.
On April 16, 2001, the trial court held a hearing to consider appellant's motion to suppress evidence. At the hearing, Officer Trout candidly admitted that he had not followed the established standards for performing field sobriety tests, the standards set forth by the National Highway Traffic Safety Administration ("NHTSA").
On April 17, 2001, the trial court denied appellant's motion to suppress evidence. On May 4, 2001, appellant pled no contest to driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(1). Appellant filed a timely notice of appeal.
 I
Because appellant's first and sixth assignments of error are interrelated, each addressing the propriety of the trial court's decision to overrule appellant's motion to suppress evidence, we consider the assignments of error together.
In her first and sixth assignments of error, appellant asserts that the trial court erred by overruling her motion to suppress evidence. Appellant asserts that the trial court should have suppressed the evidence uncovered as a result of the traffic stop for the following reasons: (1) the officer lacked reasonable suspicion to continue detaining appellant to investigate whether appellant was driving while under the influence of alcohol; and (2) the officer was without jurisdictional authority to stop and detain appellant.
 A STANDARD OF REVIEW
Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves a mixed question of law and fact. See State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1, 3. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584;State v. Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 995. Accordingly, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See State v. Smith (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668;Long, supra; State v. Medcalf (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams
(1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported. See, generally, Ornelas v.United States (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911;State v. Wise (Sept. 12, 2001), Summit App. No. 20443, unreported.
 B OFFICER TROUT POSSESSED REASONABLE SUSPICION TO CONDUCT FIELD SOBRIETY TESTS
In her first assignment of error, appellant asserts that Officer Trout lacked reasonable suspicion that she was driving while under the influence and, thus, that he lacked reasonable suspicion to conduct field sobriety tests.
The Fourth Amendment to the United States Constitution[2] protects individuals against unreasonable governmental searches and seizures. See, e.g., Delaware v. Prouse (1979), 440 U.S. 648, 662, 99 S.Ct. 1391,59 L.Ed.2d 660. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under theFourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576.
A traffic stop initiated by a law enforcement officer implicates theFourth Amendment. Whren v. United States (1996), 517 U.S. 806, 809,116 S.Ct. 1769, 135 L.Ed.2d 89. Such a traffic stop must comply with theFourth Amendment's general reasonableness requirement. In Whren, the Supreme Court recognized that the Fourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. Id. The court stated:
 "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of `persons' within the meaning of [the Fourth Amendment]. * * * An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. * * *."
Id., 517 U.S. at 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (citations omitted); see, also, Dayton v. Erickson (1996), 76 Ohio St.3d 3,11-12, 665 N.E.2d 1091, 1097-98.
In the absence of probable cause to believe that the driver of a vehicle has committed a traffic violation, a law enforcement officer generally may not stop the vehicle unless the officer observes facts giving rise to a reasonable suspicion of criminal activity. See, generally, Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; Statev. Venham (1994), 96 Ohio App.3d 649, 654, 645 N.E.2d 831, 833. To justify a traffic stop based upon less than probable cause, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime, including a minor traffic violation. SeeErickson, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091, 1097-1098; Prouse,supra; Terry, supra.
In the case at bar, appellant does not challenge the lawfulness of the officer's initial stop. The officer observed appellant commit a traffic violation. Appellant's act in driving the wrong way down a one-way street is itself a violation of the law[3] and provides both the probable cause and the reasonable suspicion necessary to effectuate a valid traffic stop. See Whren, supra; Erickson, supra. Thus, because the officer observed appellant commit a traffic violation, he possessed reasonable suspicion (and probable cause) to stop her vehicle.
Once an officer has lawfully stopped a vehicle, the officer must "carefully tailor" the scope of the stop "to its underlying justification," and the stop must "last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer (1983), 460 U.S. 491,500, 103 S.Ct. 1319, 75 L.Ed.2d 229; see, also, State v. Gonyou (1995),108 Ohio App.3d 369, 372, 670 N.E.2d 1040, 1041; State v. Birchfield
(Aug. 26, 1997), Ross App. No. 97 Ca 2281, unreported. An officer may lawfully expand the scope of the stop and may lawfully continue to detain the individual if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot. See,e.g., Terry, supra; State v. Robinette (1997), 80 Ohio St.3d 234, 240,685 N.E.2d 762.
Thus, if a law enforcement officer, during a valid traffic stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." Id.,80 Ohio St.3d at 241, 685 N.E.2d at 768. Consequently, when a law enforcement officer stops an individual for a minor traffic offense, generally the officer may not expand the scope of the stop unless the officer observes additional facts giving rise to a reasonable suspicion of other criminal activity.
An officer conducting a routine traffic stop may, therefore, expand the stop's scope in order to investigate whether the individual stopped is under the influence of alcohol and may continue to detain the individual to confirm or dispel his suspicions if the officer observes additional facts during the routine stop which reasonably lead him to suspect that the individual may be under the influence. See State v. Angel (Sept. 21, 2001), Miami App. No. 2001-CA-11, unreported; State v. Strausbaugh (Dec. 3, 1999), Montgomery App. No. 17629, unreported; State v. Strassman
(Nov. 20, 1995), Athens App. No. 98 CA 10, unreported. As the court explained in State v. Yemma (Aug. 9, 1996), Portage App. No. 95-P-0156, unreported:
 "Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated."
See, also, State v. Downey (1987), 37 Ohio App.3d 45, 46, 523 N.E.2d 521,522-23 (stating that an officer "is not prohibited from further field investigation and observations to assure that a driver who is possibly under the influence is not allowed to continue driving in that condition"); State v. Matlack (Nov. 2, 1995), Athens App. No. 95 CA 1658, unreported (stating that an officer may continue to detain a driver who is stopped for a left of center violation if the officer discovers further facts that the driver is "probably under the influence"); Statev. Litteral (June 14, 1994), Pike App. No. 93 CA 510, unreported.
In Litteral, we reviewed prior cases that discussed whether the presence of certain facts justified an officer's continued detention of a lawfully stopped individual to investigate whether the individual had been driving while under the influence:
 "In [State v.] Chelikowsky [Aug. 18, 1992), Pickaway App. No. 91 CA 27, unreported], we held that weaving and a strong odor of alcohol were sufficient to justify conducting field sobriety tests. We held that glassy bloodshot eyes and an odor of alcohol were sufficient to warrant field sobriety tests in State v. Whitt (Nov. 9, 1993), Lawrence App. No. 93 CA 11, unreported at 5-6, as is even a moderate odor of alcohol by itself. State v. Turner (Jan. 8, 1993), Highland App. No. 812, unreported at 6. Indeed, our own research indicates that, in most instances, when an initial stop is justified by reasonable suspicion of wrongdoing, a disoriented demeanor and/or odor of alcohol provides further impetus for more intrusive investigative procedures." See, e.g., State v. Gottfried (1993), 86 Ohio App.3d 106, 619 N.E.2d 1185; Columbus v. Comer (Dec. 21, 1993), Franklin App. No. 93 AP-960, unreported.
In the case at bar, we believe that Officer Trout lawfully expanded the scope of the routine traffic stop and lawfully continued to detain appellant in order to confirm or dispel his suspicions that she was driving while under the influence of alcohol. First, the officer observed appellant drive the wrong-way down not one, but two, one-way streets. An inability to follow traffic signs may indicate impaired driving skills. Second, when the officer approached appellant's vehicle he noticed a strong odor of alcohol emanating from the vehicle. Third, appellant's inability to quickly locate her license also aroused the officer's suspicions. The combination of the above factors, especially appellant's conduct in driving the wrong-way down a one-way street and appellant's disoriented demeanor when she attempted to locate her license, led Officer Trout to reasonably suspect that appellant may have been driving while under the influence. See Chelikowsky, supra (concluding that traffic violation and odor of alcohol sufficient to conduct field sobriety tests); Gottfried, supra (stating that disoriented demeanor may justify officer's decision to conduct field sobriety tests). We therefore believe that Officer Trout properly possessed a reasonable suspicion that appellant was driving while under the influence and that he lawfully expanded the scope of the stop to administer field sobriety tests.
We believe that appellant's reliance on State v. Kolesar (Sept. 20, 2001), Franklin App. No. 00AP-1435, unreported, is misplaced. We note that the officer in Kolesar did not observe the defendant commit a traffic violation. The Kolesar court therefore concluded that the officer had not observed any factors to indicate that the defendant's driving skills were impaired.
We therefore disagree with appellant that the trial court erred by overruling appellant's motion to suppress. We agree with the trial court that the officer possessed a sufficient basis to conduct field sobriety tests.
 C OFFICER TROUT DID NOT UNLAWFULLY ARREST APPELLANT OUTSIDE OF THE OFFICER'S JURISDICTION
In her sixth assignment of error, appellant argues that the trial court should have granted her motion to suppress because Officer Trout arrested appellant outside of his territorial jurisdiction, in violation of R.C.2935.03.[4]
Assuming, arguendo, that Officer Trout violated R.C. 2935.03 when he arrested appellant, we believe that this violation does not invalidate appellant's arrest. Many cases have spoken to this issue and hold that the exclusionary rule does not mandate the suppression of evidence gathered during a warrantless arrest simply because the officer arrested an individual outside the officer's jurisdiction. See State v. Droste
(1998), 83 Ohio St.3d 36, 40, 697 N.E.2d 620, 623 (noting that the Ohio Supreme Court "has stated on many occasions that absent a violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule"); Kettering v. Hollen (1980), 64 Ohio St.2d 232,416 N.E.2d 598, syllabus; State v. Brown (Apr. 16, 1999), Pickaway App. No. 98 CA 27, unreported; State v. Brewer (Feb. 21, 1997), Highland App. No. 95 CA 870, unreported. But, see, State v. Grubb (1993),82 Ohio St.3d 187, 611 N.E.2d 516; State v. Weideman (Oct. 6, 2000), Portage App. No. 98-P-0109, unreported;[5] The exclusionary rule applies to cases that involve a violation of the United States or Ohio Constitutions, not to cases that involve a violation of state statutes. See Kettering, 64 Ohio St.2d at 234, 416 N.E.2d at 600 (stating that "[t]he exclusionary rule has been applied by this court to violations of a constitutional nature only").
Thus, assuming, arguendo, that Officer Trout arrested appellant outside of the officer's territory, this arrest may constitute a statutory violation, not a constitutional violation which could involve the exclusionary rule and invalidate the arrest. Consequently, we disagree with appellant that the trial court erred by overruling her motion to suppress on the basis that the officer exceeded his jurisdictional authority in arresting appellant.
Accordingly, based upon the foregoing reasons, we overrule appellant's first and sixth assignments of error.
 II
In her second through fifth assignments of error, appellant argues that the trial court erred by admitting certain evidence. Appellant asserts, citing State v. Homan (1999), 89 Ohio St.3d 421, 732 N.E.2d 952, that the trial court, when determining whether probable cause to arrest existed, improperly admitted and considered evidence regarding appellant's performance of the field sobriety tests. In particular, appellant contends that the trial court erred by admitting the following evidence when the officer admitted that he did not strictly comply with the NHTSA standards: (1) the officer's testimony concerning his attempt to administer the HGN test; (2) the officer's testimony that based upon his observations of appellant's attempts to comply with the field sobriety tests, appellant would test over the legal limit; and (3) the officer's testimony regarding appellant's attempt to perform the walk — and — turn test.
In Homan, the Ohio Supreme Court held that before a court may consider the results of field sobriety tests as evidence of probable cause to arrest, the officer "must have administered the test in strict compliance with standardized testing procedures." Id., paragraph one of the syllabus. In so concluding, the court observed that the reliability of field sobriety tests "depends largely upon the care with which they are administered." Id., 89 Ohio St.3d at 425, 732 N.E.2d at 956.
In the case sub judice, the trial court found, and the officer conceded, that the officer did not administer the field sobriety tests in strict compliance with the established standardized testing procedures. Thus, in determining whether probable cause to arrest existed, we agree with appellant that the trial court could not consider evidence of the officer's testing regarding the appellant's performance of the field sobriety tests. See id., paragraph one of the syllabus.
After our review of the record, we note that whether the trial court did, in fact, rely upon the officer's testimony concerning his attempts to administer the sobriety tests is unclear. Assuming, however, that the trial court did improperly rely upon such testimony, we find the error to be harmless. See Crim.R. 52(A) (stating that harmless errors "shall be disregarded"). We note that even if the field sobriety test evidence must be excluded due to an officer's failure to administer the tests in strict compliance with established standards, evidence other than the accused's performance of the tests may nevertheless demonstrate probable cause to arrest. See Homan, 89 Ohio St.3d at 427, 732 N.E.2d at 957 (stating that "probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of" the field sobriety tests).
 "The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety test were administered or where * * * the test results must be excluded for lack of strict compliance."
Id.
In determining whether probable cause to arrest exists, the totality of the facts and circumstances must be "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,13 L.Ed.2d 142; Gerstein v. Pugh (1975), 420 U.S. 103, 111-112, 95 S.Ct. 854,43 L.Ed.2d 54; State v. Tibbetts (2001), 92 Ohio St.3d 146, 153,749 N.E.2d 226, 242. In State v. Medcalf (1996), 111 Ohio App.3d 142,147, 675 N.E.2d 1268, 1271, we explained when an officer possesses probable cause to arrest an individual for a violation of R.C.4511.19(A)(1):
 "To determine whether an officer had probable cause to arrest an individual for a violation of R.C. 4511.19(A), the court must examine whether, at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving while under the influence of alcohol. * * * * An arrest for driving under the influence need only be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol."
Id., 111 Ohio App.3d at 147-148, 675 N.E.2d at 1271 (citations omitted).
In the case at bar, we believe that the totality of the circumstances known to Officer Trout demonstrate that he possessed probable cause to arrest for a R.C. 4511.19(A)(1) violation. The officer initially stopped appellant for driving the wrong way down a one-way street. When the officer approached appellant's vehicle, the officer detected an odor of alcohol emanating from the vehicle. The officer noticed appellant's disoriented demeanor in trying to locate her driver's license. When appellant and the officer were alone, the officer detected an odor of alcohol emanating from appellant's breath. The officer observed appellant "almost" fall out of her vehicle and observed appellant use the vehicle for support. The officer noticed that appellant stumbled as she approached the rear of the vehicle. Thus, the combination of appellant's inability to observe and follow traffic control devices by driving the wrong way on one way streets, appellant's disoriented demeanor, appellant's inability to walk without stumbling or using the vehicle for balance, and the strong odor of alcohol emanating from appellant's breath all contribute to a finding that Officer Trout possessed probable cause to believe that appellant had been driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(1).
Accordingly, based upon the foregoing reasons, we overrule appellant's second through fifth assignments of error. Thus, we hereby affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Evans, J.: Concur in Judgment Opinion.
[1] R.C. 4511.19(A)(1) provides:
 No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
 (1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse.
[2] The Fourth Amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Section 14, Article I of the Ohio Constitution also protects individuals from unreasonable searches and seizures. The section provides:
 The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.
[3] R.C. 4511.32 provides: "Upon a roadway designated and posted with signs for one-way traffic a vehicle shall be driven only in the direction designated."
[4] R.C. 2935.03 provides in relevant part:
 (D) If a sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, member of a police force employed by a metropolitan housing authority under division (D) of section 3735.31 of the Revised Code, member of a police force employed by a regional transit authority under division (Y) of section 306.35
of the Revised Code, special police officer employed by a port authority under section 4582.04 or 4582.28
of the Revised Code, township constable, police officer of a township or joint township police district, state university law enforcement officer appointed under section 3345.04 of the Revised Code, peace officer of the department of natural resources, individual designated to perform law enforcement duties under section 511.232 [511.23.2], 1545.13, or 6101.75 of the Revised Code, the house sergeant at arms if the house sergeant at arms has arrest authority pursuant to division (E)(1) of section 101.311 [101.31.1] of the Revised Code, or an assistant house sergeant at arms is authorized by division (A) or (B) of this section to arrest and detain, within the limits of the political subdivision, metropolitan housing authority housing project, regional transit authority facilities or those areas of a municipal corporation that have been agreed to by a regional transit authority and a municipal corporation located within its territorial jurisdiction, port authority, college, or university in which the officer is appointed, employed, or elected or within the limits of the territorial jurisdiction of the peace officer, a person until a warrant can be obtained, the peace officer, outside the limits of that territory, may pursue, arrest, and detain that person until a warrant can be obtained if all of the following apply:
 (1) The pursuit takes place without unreasonable delay after the offense is committed;
 (2) The pursuit is initiated within the limits of the political subdivision, metropolitan housing authority housing project, regional transit authority facilities or those areas of a municipal corporation that have been agreed to by a regional transit authority and a municipal corporation located within its territorial jurisdiction, port authority, college, or university in which the peace officer is appointed, employed, or elected or within the limits of the territorial jurisdiction of the peace officer;
 (3) The offense involved is a felony, a misdemeanor of the first degree or a substantially equivalent municipal ordinance, a misdemeanor of the second degree or a substantially equivalent municipal ordinance, or any offense for which points are chargeable pursuant to division (G) of section 4507.021 [4507.02.1] of the Revised Code.
 (E) In addition to the authority granted under division (A) or (B) of this section:
 (1) A sheriff or deputy sheriff may arrest and detain, until a warrant can be obtained, any person found violating section 4503.11, 4503.21, or 4549.01, sections 4549.08 to 4549.12, section 4549.62, or Chapter 4511. or 4513. of the Revised Code on the portion of any street or highway that is located immediately adjacent to the boundaries of the county in which the sheriff or deputy sheriff is elected or appointed.
 (2) A member of the police force of a township police district created under section 505.48 of the Revised Code, a member of the police force of a joint township police district created under section 505.481
[505.48.1] of the Revised Code, or a township constable appointed in accordance with section 509.01
of the Revised Code, who has received a certificate from the Ohio peace officer training commission under section 109.75 of the Revised Code, may arrest and detain, until a warrant can be obtained, any person found violating any section or chapter of the Revised Code listed in division (E)(1) of this section, other than sections 4513.33 and 4513.34 of the Revised Code, on the portion of any street or highway that is located immediately adjacent to the boundaries of the township police district or joint township police district, in the case of a member of a township police district or joint township police district police force, or the unincorporated territory of the township, in the case of a township constable. However, if the population of the township that created the township police district served by the member's police force, or the townships that created the joint township police district served by the member's police force, or the township that is served by the township constable, is sixty thousand or less, the member of the township police district or joint police district police force or the township constable may not make an arrest under division (E)(2) of this section on a state highway that is included as part of the interstate system.
 (3) A police officer or village marshal appointed, elected, or employed by a municipal corporation may arrest and detain, until a warrant can be obtained, any person found violating any section or chapter of the Revised Code listed in division (E)(1) of this section on the portion of any street or highway that is located immediately adjacent to the boundaries of the municipal corporation in which the police officer or village marshal is appointed, elected, or employed.
 (4) A peace officer of the department of natural resources or an individual designated to perform law enforcement duties under section 511.232 [511.23.2], 1545.13, or 6101.75 of the Revised Code may arrest and detain, until a warrant can be obtained, any person found violating any section or chapter of the Revised Code listed in division (E)(1) of this section, other than sections 4513.33 and 4513.34 of the Revised Code, on the portion of any street or highway that is located immediately adjacent to the boundaries of the lands and waters that constitute the territorial jurisdiction of the peace officer.
[5] The Weideman court certified its decision to be in conflict with several other Ohio appellate courts. The Ohio Supreme Court granted the certification on the following question:
 "Whether a stop and detention of a motorist by a police officer, who is beyond his or her jurisdictional limits, for an offense observed and committed outside the officer's jurisdiction automatically constitutes a per se unreasonable seizure under the Fourth Amendment, thereby triggering the mandatory application of the exclusionary rule to suppress all evidence flowing from the stop."
State v. Weideman (2001), 91 Ohio St.3d 1446, 1447, 742 N.E.2d 144,144-45 (emphasis sic).
The court recognized the conflict cases as State v. Filler (1995),106 Ohio App.3d 731, 667 N.E.2d 54; State v. Tennison (Apr. 14, 1989), Wood App. No. WD-88-41, unreported; State v. Brown (Apr. 16, 1999), Pickaway App. No. 98CA27, unreported; and State v. Hammons (Aug. 28, 1998), Montgomery App. No. 16931, unreported. Id.