[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 36.]

THE STATE OF OHIO, APPELLANT, *v.* DROSTE, APPELLEE.

[Cite as *State v. Droste*, 1998-Ohio-182.]

*Statutes—Absent violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule.*

Absent a violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule.

(No. 97-998—Submitted May 12, 1998—Decided August 19, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 96APC07-906.

_____

{¶ 1} Late at night on February 24, 1996, towards the end of their shift, investigators Michael Betts and Philip Williams of the Ohio Department of Liquor Control were driving on State Route 315 in Columbus, Ohio, when a vehicle traveling at approximately ninety to one hundred miles per hour passed them. The investigators observed the vehicle move from the center lane to the left lane without a turn signal, abruptly slow down for a vehicle in the left lane, then move back into the left lane without a turn signal. The investigators continued to observe the vehicle while they reported their observations and location to the Law Enforcement Emergency Radio Network ("LEERN"), a city and state law enforcement radio system. The vehicle slowed down for traffic in its path, and the investigators were able to note the vehicle's license plate number and to positively identify the driver and the vehicle's three other occupants.

{¶ 2} The vehicle then exited State Route 315 at Lane Avenue and stopped at a traffic light. Just after the vehicle stopped at the light, the investigators received a communication over LEERN to request that they stop the vehicle and to tell them that a marked law enforcement car was on the way. The investigators exited their vehicle and approached the other vehicle. They identified themselves as police

officers, and asked the driver for his name and identification. The driver, Brian A. Droste, appellee-defendant herein, stated his name and age. Investigator Betts noted an odor of alcohol about Droste and asked him to exit the vehicle. Betts observed that Droste needed to use the vehicle for support when he exited the vehicle. Betts read Droste his *Miranda* rights and then asked Droste how much he had had to drink. Droste responded that he had drunk several glasses of gin. Betts determined that Droste was underage and arrested him for underage drinking.

{¶ 3} Meanwhile, Officer Lagore of the Columbus Police Department responded to a request he had received over LEERN to assist the liquor control investigators. Lagore himself did not make the original request of the investigators for assistance in stopping the vehicle. Lagore arrived on the scene when Droste had exited the vehicle and the investigators had arrested him for underage drinking. The liquor control investigators informed Lagore of their observations: the vehicle's high rate of speed and the erratic driving and weaving. Lagore asked Droste whether Droste had been driving the vehicle and Droste responded, "yes." Lagore could smell alcohol on Droste and asked whether Droste had been drinking. Droste confirmed that he had been drinking earlier in the evening.

{¶ 4} Investigator Williams then performed a field sobriety test on Droste, under Lagore's observation. Droste performed poorly on these tests, and Lagore arrested him for operating a motor vehicle while under the influence of alcohol ("OMVI") and for reckless operation. Lagore then transported Droste to Columbus police headquarters, followed by the two liquor control investigators, where Droste submitted to a breathalyzer test, resulting in a blood-alcohol content level of 0.124 percent.

{¶ 5} Lagore charged Droste with operating a motor vehicle while under the influence of alcohol, a violation of R.C. 4511.19(A)(1) and (B)(2), and for reckless operation, a violation of Columbus City Code 2133.02(A) (later amended to charge

a violation of the comparable state statute, R.C. 4511.20). Investigator Betts charged Droste with underage drinking, a violation of R.C. 4301.632.

{¶ 6} On April 9, 1996, Droste filed motions to suppress evidence and to dismiss the charges. On June 26, 1996, the trial court denied both motions. Droste pled no contest to one count of OMVI and to the count of reckless operation. The trial court dismissed the remaining charges.

{¶ 7} Droste appealed the trial court's decision, asserting that the liquor control investigators did not have jurisdiction to stop his vehicle, and therefore all evidence obtained subsequent to the traffic stop must be suppressed. On April 1, 1997, the court of appeals reversed the conviction.

{¶ 8} This cause is now before this court upon the allowance of a discretionary appeal.

_____

*Janet E. Jackson*, Columbus City Attorney, *Stephen L. McIntosh*, City Prosecutor, and *Brenda J. Keltner*, Assistant City Prosecutor, for appellant.

*McCorkle & Minnillo* and *Christopher J. Minnillo*, for appellee.

*D. Timothy Huey*, urging affirmance for *amicus curiae*, Ohio Association of Criminal Defense Lawyers.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 9} The issues presented by this case are (1) whether liquor control investigators have the authority to stop an individual for violating traffic laws, and (2) if the liquor control investigators did not have the authority to make a traffic stop, must all evidence deriving from that stop be suppressed.

{¶ 10} R.C. 5502.61(C) and (D)[1] set forth the authority granted by the legislature to liquor control investigators:

"(C)(1)  A liquor control investigator, on any retail liquor permit premises or any other premises where a violation of Title XLIII of the Revised Code or any rule adopted under it is occurring, has the authority vested in peace officers under section 2935.03 of the Revised Code to keep the peace and to enforce and make arrests for those violations.  A liquor control investigator may also execute search warrants and seize and take into custody any property relating to any of those violations.

"(2)  A liquor control investigator who is on, immediately adjacent to, or across from a retail liquor permit premises and is performing investigative duties relating to that premises or who is on a tract of land that is not a liquor permit premises but where violations of Title XLIII of the Revised Code allegedly are occurring, or who is in view of a suspected violation of Title XLIII of the Revised Code, has the authority to enforce that title and sections 2903.12, 2903.13, 2903.14, 2907.09, 2917.11, 2921.13, 2921.31, 2921.32, 2921.33, 2923.12, 2923.121, 2925.11, 2925.13, and 4507.30 of the Revised Code if the offense is witnessed during an investigation of or the enforcement of an offense described in Title XLIII of the Revised Code.  Nothing in this section shall be construed to supersede or curtail local law enforcement authority.

" * * *

"(D)  A liquor control investigator may render assistance to a state or local law enforcement officer at that officer's request or in an emergency.  A liquor control investigator who renders assistance authorized by this division to a state or

---

1.  R.C. 5502.61 has been amended since the time of the stop and arrest that are the subject of the case *sub judice*.  Other than changing the designation of the paragraphs we are analyzing here, the changes to the statute do not affect our decision herein.  (146 Ohio Laws, Part III, 6022-6023.)

local law enforcement officer shall be considered as performing services within the scope of the investigator's regular employment. * * * "

{¶ 11} Under the general rule of statutory construction *expressio unius est exclusio alterius*, the expression of one or more items of a class implies that those not identified are to be excluded. *Thomas v. Freeman* (1997), 79 Ohio St.3d 221, 224-225, 680 N.E.2d 997, 1000; *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817; *Montgomery Cty. Bd. of Commrs. v. Pub. Util. Comm.* (1986), 28 Ohio St.3d 171, 28 OBR 262, 503 N.E.2d 167.

{¶ 12} In R.C. 5502.61(C), the General Assembly listed the specific criminal violations that it authorized liquor control investigators to enforce: any violation under R.C. Title 43, and specific violations under R.C. Titles 29 and 45,[2] if the investigators witnessed the commission of the offense during an investigation or the enforcement of an offense described in R.C. Title 43. Traffic offenses (other than R.C. 4507.30), including the offense of OMVI (R.C. 4511.19) are not listed and therefore the General Assembly did not envision liquor control investigators routinely enforcing the traffic laws. Additionally, in the case *sub judice*, the investigators were not in the process of investigating or enforcing an R.C. Title 43 offense when they saw appellee driving erratically, and thus they did not have authority to stop him.

{¶ 13} We therefore conclude that the authority granted in R.C. 5502.61 to liquor control investigators to investigate and enforce offenses under R.C. Title 43 and certain offenses under R.C. Title 29 and Title 45 does not confer authority upon a liquor control investigator to stop a driver for violating traffic laws, if the investigator was not in the process of investigating one of the offenses listed in R.C.

---

2. The offenses listed in R.C. 5502.61(C)(2) are aggravated assault, assault, negligent assault, public indecency, disorderly conduct, falsification, obstructing official business, obstructing justice, resisting arrest, carrying concealed weapons, illegal possession of a firearm in a liquor permit premises, possession of drugs, permitting drug abuse, and committing prohibited acts involving a false or illegal identification card or driver's license.

5502.61. See, generally, *Cincinnati v. Alexander* (1978), 54 Ohio St.2d 248, 254, 8 O.O.3d 224, 227, 375 N.E.2d 1241, 1245, and at syllabus; *State v. Holbert* (1974), 38 Ohio St.2d 113, 116-117, 67 O.O.2d 111, 113, 311 N.E.2d 22, 25, and at paragraph two of the syllabus.

{¶ 14} The General Assembly did provide a limited circumstance when liquor control investigators may involve themselves in the enforcement of other, non-listed offenses: when rendering assistance to state or local law enforcement officers or in an emergency. R.C. 5502.61(D). But in the case *sub judice*, there is no supportable evidence in the record to support the supposition that a state or local law enforcement officer did indeed request assistance or that the situation constituted an emergency. At the suppression hearing, investigator Betts testified that he received a request over LEERN, but failed to identify just who made that request. Also at the hearing, Officer Lagore testified that he definitely did *not* make the request. Because there was no evidence in the record of the request for assistance coming from "a state or local law enforcement officer," we cannot find that the investigators followed the authority provided in R.C. 5502.61(D).

{¶ 15} Having found that the liquor control investigators violated the statute granting them authority to stop and arrest appellee, we next consider whether the information they provided to Officer Lagore must be suppressed. We have stated on many occasions that absent a violation of a constitutional right, the violation of a statute does not invoke the exclusionary rule. *Hilliard v. Elfrink* (1996), 77 Ohio St.3d 155, 158, 672 N.E.2d 166, 169; *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 5-6, 573 N.E.2d 32, 36 (Alice Robie Resnick, J., dissenting); *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 235, 18 O.O.3d 435, 437, 416 N.E.2d 598, 600.

{¶ 16} The record in the case *sub judice* reveals that appellee's constitutional rights were not violated. According to Betts's testimony, Droste stopped on his own accord at the traffic light when he exited State Route 315. Lagore testified that when he arrived on the scene, the liquor control investigators

6

told him of the vehicle's excessive speed and of Droste's erratic driving and weaving.[3] Lagore could smell alcohol on Droste. Upon questioning by Lagore, Droste admitted that he had been driving the vehicle and that he had been drinking earlier in the evening. Droste subsequently failed the field sobriety tests. Based on the foregoing facts, Lagore had probable cause to arrest Droste. Thus, Droste's rights under the Fourth Amendment were not violated, and the evidence should not be suppressed.

{¶ 17} We reverse the judgment of the court of appeals and reinstate the trial court's conviction of appellee.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY and COOK, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

PFEIFER, J., dissents and would affirm the judgment of the court of appeals.

_____

**LUNDBERG STRATTON, J., concurring.**

{¶ 18} I agree with the majority but take exception with the conclusion that there is no supportable evidence in the record that the situation facing the liquor control investigators constituted an emergency. The investigators observed the operator of a vehicle driving *ninety to one hundred* miles per hour and changing lanes recklessly. Such behavior clearly was cause for alarm. This evidence is sufficient to constitute an emergency situation and the investigators' failure to act may have led to tragic consequences on the highway, especially in light of the fact that the defendant's blood-alcohol content tested at a level of 0.124.

_____

3. The mere providing to a police officer of information upon which that officer will base and continue a criminal investigation and eventually file a criminal complaint is not an exercise of the authority "to keep the peace and to enforce and make arrests" as stated in R.C. 5501.61(C)(1). *Holbert*, 38 Ohio St.2d at 117, 67 O.O.2d at 113-114, 311 N.E.2d at 25. Thus, Officer Lagore could rely on the information provided to him by the liquor control investigators to complete his investigation.

**{¶ 19}** R.C. 5502.61(D) authorizes a liquor control investigator to render assistance "at that officer's request *or* in an emergency."  Because the statute is written in the disjunctive, the investigator may give assistance in an emergency without also being requested to do so by an officer.  Although these investigators did receive a  request over LEERN to stop the vehicle, this situation clearly constituted an emergency.  Therefore, I believe the investigators *were* authorized to make the stop.

_____