JOURNAL ENTRY AND OPINION
{¶ 1} Gerald Bryan appeals from an order denying a motion to suppress evidence presented supporting the charges of failure to comply with orders, in violation of R.C. 2921.331, and driving under the influence, in violation of R.C. 4511.19. After a review of the record and arguments of the parties, we affirm the decision of the trial court for the reasons set forth below.
 {¶ 2} On September 7, 2003, appellant engaged North Royalton police in a high-speed chase, which ended when the police abandoned the pursuit for safety reasons. A dispatch was issued to neighboring cities, giving a description of the vehicle and a temporary tag license number.
 {¶ 3} Officer Bartlett of the Strongsville police received the dispatch and learned that the appellant resided in Strongsville. When the officer went to investigate, he came upon a car matching the description and license number issued in the dispatch and appellant leaning up against the car. After calling for back-up, Officer Bartlett engaged the appellant in conversation until other officers arrived. Officer Breyley of North Royalton then arrived, identified appellant's car as the one he had been pursuing, and appellant was arrested.
 {¶ 4} Appellant presents one assignment of error in this appeal.
 {¶ 5} "I. The trial court erred in violation of the fourth
and fourteenth amendments to the United States constitution and article I, Section 14 of the Ohio constitution when it failed to suppress the identification as the fruit of an illegal detention."
 {¶ 6} Appellant argues that his motion to suppress was improperly denied because Strongsville police officers had no reasonable suspicion of criminal activity when he was detained. In reviewing a motion to suppress, this court adheres to the standard of review as articulated in State v. Curry: "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973),34 Ohio St.2d 250. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v.Schiebel (1990), 55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627."State v. Curry, (1994), 95 Ohio App.3d 93 at 96.
 {¶ 7} Pursuant to Florida v. Royer (1982), 460 U.S. 491,501-507, 75 L.Ed.2d 229, 103 S.Ct. 1319, there are three types of police-citizen contacts in which Fourth Amendment guarantees are implicated: consensual encounter, investigatory stop, and an arrest. In State v. Scott (Aug. 5, 1999), Cuyahoga App. No. 74352, at 7-9, this court stated:
 {¶ 8} "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation and request information, and the person is free to answer or walk away. United States v. Mendenhall (1980),446 U.S. 544, 553, 64 L.Ed.2d 497, 100 S.Ct. 1870. The request to examine a person's identification does not make an encounter nonconsensual. Florida v. Rodriguez (1984), 469 U.S. 1, 4-6,83 L.Ed.2d 165, 105 S.Ct. 308. Nor does the request to search a person's belongings. Florida v. Bostick (1991), 501 U.S. 429,115 L.Ed.2d 389, 111 S.Ct. 2382. The Fourth Amendment guarantees are not implicated in such an encounter unless the police officers have by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. Mendenhall, 446 U.S. at 566. Moreover, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such criminal prosecutions. Royer,
supra, at 498. Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the two other Supreme Court categories.
 {¶ 9} "The second type of encounter is that described inTerry v. Ohio (1968), 392 U.S. 1, 16-19, 20 L.Ed.2d 889,88 S.Ct. 1868. This is the investigatory stop that is more intrusive than the consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel suspicions. Id. A person is seized during an investigatory detention when, in consideration of all the circumstances surrounding the encounter, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or was compelled to respond to questions. Mendenhall, supra. Factors to consider when reviewing a seizure include: a threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, or blocking the citizen's path.446 U.S. at 554.
 {¶ 10} "The third type of encounter involves a seizure that is equivalent to an arrest. To initiate such a seizure the police officer must have probable cause. Terry, supra. A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested. State v.Barker (1978), 53 Ohio St.2d 135, 372 N.E.2d 1324." Accord,State v. Polk (Dec. 6, 2001), Cuyahoga App. No. 79170 at 8-11.
 {¶ 11} In the instant case, Strongsville Officer Bartlett was alerted that a black Nissan with a temporary tag had led the North Royalton police on a high-speed chase. Because police were able to read the license number on the temporary tag, Officer Bartlett was able to identify a subject and an address, in Strongsville, and proceeded to that location to investigate. Upon locating the car described by the North Royalton police, he found a man leaning into the vehicle, the appellant. After informing the dispatcher that he had located the vehicle, he approached the appellant. During the conversation, appellant identified himself and affirmed that the car in question was his. Further, Officer Bartlett testified that he smelled alcohol on the appellant's breath.
 {¶ 12} Based on these facts, even if the officer's actions could have been classified as an investigatory detention, the appellant was not detained without cause. Even where an officer does not see a defendant commit a crime, a dispatch based on a reliable report from a fellow officer can provide reasonable suspicion for a Terry stop or probable cause for an arrest.State v. Fultz (1968), 13 Ohio St.2d 79, 234 N.E.2d 593;United States v. Hensley (1985), 469 U.S. 221, 105 S.Ct. 675,83 L.Ed.2d 604; State v. Droste (1998), 83 Ohio St.3d 36, 40,697 N.E.2d 620, 623, fn. 3, certiorari denied (1999),526 U.S. 1145, 119 S.Ct. 2021, 143 L.Ed.2d 1032. However, if a dispatch was issued in the absence of reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment.Hensley, 469 U.S. at 232; see, also, State v. Williams,
Cuyahoga App. No. 81364, 2003-Ohio-2647.
 {¶ 13} The radio dispatch identifying the car and license number involved in the high-speed chase with North Royalton police, coupled with the odor of alcohol on the appellant, is more than enough information to give the Strongsville police reasonable suspicion to detain the appellant long enough for the original North Royalton police officer to arrive and confirm that he was the suspect he had been pursuing. Appellant was held by the Strongsville police only as long as it took to confirm the suspicion raised by the radio dispatch. Therefore, there was no error in the trial court's denial of the motion to suppress, and the sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Calabrese, Jr., J., concur.