[Cite as *State v. Bulin*, 2011-Ohio-3398.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 09 BE 27 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| RICHARD TATOY BULIN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:    Criminal Appeal from Common Pleas
                             Court, Case No. 96 CR 36.


JUDGMENT:                    Affirmed.


APPEARANCES:
For Plaintiff-Appellee:      Attorney Chris Berhalter
                             Prosecuting Attorney
                             Attorney Helen Yonak
                             Asst. Prosecuting Attorney
                             147-A W. Main Street
                             St. Clairsville, OH  43950


For Defendant-Appellant:     Attorney John A. Vavra
                             132 W. Main Street
                             P.O. Box 430
                             St. Clairsville, OH  43950


JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio


                             Dated:  June 24, 2011

DeGenaro, J.

**{¶1}** Defendant-Appellant, Richard Bulin, appeals the decision of the Belmont County Court of Common Pleas convicting him of operating a motor vehicle under the influence of alcohol with a specification of two previous felony OVI convictions, and sentencing him accordingly. Bulin first argues that the court erred in overruling his motion to suppress the evidence of the stop and arrest because the Public Safety Agent should have initiated the stop; the Highway Patrol officers had no authority to administer a field sobriety test on private property; and that one test was conducted improperly. Second, Bulin argues that the evidence was insufficient to prove that his ability to operate his vehicle was noticeably impaired. And third, Bulin argues that because the State's evidence of his prior convictions was inadmissible the trial court erred in sentencing him on the specification.

**{¶2}** Bulin's arguments are meritless. First, the trial court did not err in overruling the suppression motion. Agent Shannon did not have jurisdiction to perform a traffic stop but Sergeant Tracy administered the field sobriety tests at the direction and in the presence of an officer who did have jurisdiction. And because Bulin did not challenge the administration of the field sobriety test in his suppression motion, he cannot raise the issue for the first time on appeal. Second, the State presented sufficient evidence at trial to support Bulin's conviction for OVI. Deputy Stewart could properly rely on the observations of Agent Shannon and Sergeant Tracy to establish probable cause to arrest, and the totality of the facts and circumstances support a finding of probable cause to arrest. Finally, because the State properly proved that Bulin had one prior felony OVI conviction, even if the State's evidence of the second prior conviction was inadmissible, there was no material prejudice since one prior conviction can support the specification. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

**{¶3}** The Belmont County Grand Jury issued a secret indictment charging Bulin with operating a motor vehicle while under the influence of alcohol and/or drugs of abuse

(R.C. 4511.19(A)(1)(a),(G)(1)(e)(i)). The indictment included a specification that Bulin was previously convicted of two felony OVI offenses in the Stark County Court of Common Pleas: one on April 23, 2003, Case No. 2003CR0105; and one on October 31, 2005, Case No. 2005CR0898. As charged with the specification, the offense is a third degree felony.

{¶4}    Bulin filed a motion arguing for dismissal of the charges because the arrest was made on private property, or in the alternative, arguing for suppression of any evidence obtained because there was no probable cause to stop and/or arrest him.

{¶5}    At the suppression hearing, the State called Kellette Shannon, who testified that she is an agent with the Ohio Department of Public Safety, the Ohio Investigative Unit, which enforces Title 43 liquor laws. She testified to her extensive training at the Columbus Police Department Academy regarding people under the influence of alcohol. Her department does not allow her to perform traffic stops unless the local agency requests her to do so, but she is able to enforce traffic laws as it pertains to Ohio liquor laws.

{¶6}    Agent Shannon testified that on the evening of January 18, 2009, she was working but was not on patrol; she was traveling westbound on Interstate 70 on her way to the Cambridge OSP post to secure evidence. While driving in the passing lane, she observed Bulin's vehicle swerving into the right berm and then swerving into the fast lane. Agent Shannon got behind Bulin's vehicle and followed him to confirm he was not a tired driver. She saw him swerving into the berm several times. She stated that she contacted the highway patrol dispatcher to inform them that she was following an apparently impaired driver. She said that she followed Bulin for approximately two to three miles before she saw him exit the highway and she followed him, observing that he drove into the berm while exiting. Agent Shannon explained that she was in an unmarked vehicle with lights, but she did not activate them.

{¶7}    Agent Shannon testified that she followed Bulin's vehicle into a gas station, and after he pulled up to a gas pump, she parked in a parking space at the station. She saw Bulin exit his vehicle and fall onto his car as he cleaned the windows. Bulin got back

into the driver's seat of the vehicle, put the car in reverse, and parked next to Agent Shannon's vehicle. He then rolled down the window and asked her for directions to Akron.

{¶8} Agent Shannon testified that when Bulin asked her for directions, "[h]e appeared severely intoxicated. He had slurred speech." She asked him how much he had drank that night and stated that he replied, "Oh, I'm really drunk." She testified that Bulin said he had been up for two days gambling and drinking. At that point, the radio in Agent Shannon's vehicle went off, and Bulin asked her if she was a police officer. She said she was and showed him her badge, which was hidden on a chain underneath her shirt because she is a plain clothes officer. She asked him to turn his vehicle off and take his keys out, which he did. Bulin then exited via the driver's side and approached her vehicle. Agent Shannon got out of her vehicle and asked Bulin for his driver's license, which he gave her. At that point, the state highway patrol arrived. She said that the sheriff's department arrived just minutes after the state patrol arrived. When the other two officers arrived, Agent Shannon began writing her statement in her vehicle and was not involved in administering any field sobriety tests. Agent Shannon testified that she never initiated a stop, that Bulin stopped on his own, and that she did not arrest Bulin.

{¶9} In response to questioning about Bulin's person as she got closer to him, Agent Shannon testified: "[H]e had glassy, blood-shot eyes. I smelled an odor of alcoholic beverage from his mouth. He slurred his speech. He was swaying. He could barely stand up straight."

{¶10} Deputy Randy Stewart of the Belmont County Sheriff's Road Division testified that he was dispatched to the 208 BP Station. When he arrived at the station, Bulin was in the back seat of Sergeant Tracy's patrol car, and Sergeant Tracy told Deputy Stewart that Bulin was there because he had outstanding warrants. Deputy Stewart explained that he then put Bulin in his patrol car and placed Bulin under arrest for the three outstanding warrants from Stark County.

{¶11} Deputy Stewart testified that he asked Sergeant Tracy to administer the field sobriety tests because Sergeant Tracy had video capability in his vehicle and Deputy

Stewart did not. Sergeant Tracy performed the divided attention skills tests and Deputy Stewart observed. During the tests, Deputy Stewart observed that Bulin appeared to be impaired. When asked what he based that on, he replied: "Just his blood-shot eyes. I mean, I smelled odor of alcohol; there was slurring of speech. He was falling asleep in the back seat of my car at times." Deputy Stewart said that during the field sobriety tests he observed that Bulin had some balance issues. He explained that during the test he was standing off to the side because he did not want to be a hindrance. Deputy Stewart also stated that Bulin said he had been drinking at the track.

{¶12} After Sergeant Tracy finished administering the field sobriety tests, Sergeant Tracy told Deputy Stewart that Bulin was impaired. Deputy Stewart placed Bulin under arrest for OVI, and transported Bulin to the highway patrol barracks in St. Clairsville to perform the breath test. After they arrived, the test was set up, but Bulin refused to take it. Deputy Stewart then took Bulin to the county jail on the warrants and the OVI.

{¶13} On cross, Deputy Stewart stated that he was called to the investigation due to private property issues. He testified that there was no reason why he could not have performed the field sobriety tests on Sergeant Tracy's video camera. He described the weather conditions as cold and starting to snow, and he stated there were puddles of water on the ground. He testified that during the walk-and-turn test, Bulin said that he was stepping over a puddle to avoid getting his feet wet.

{¶14} On redirect, Deputy Stewart agreed that Sergeant Tracy had administered more field sobriety tests than he had, and Sergeant Tracy was better trained to perform the tests. Deputy Stewart also testified that Sergeant Tracy did not indicate that he would hold the fact that Bulin stepped over the puddle against him in any way.

{¶15} Sergeant Tracy testified he had worked for the Ohio State Highway Patrol for eight and a half years. While on patrol he received a call that there was a possible impaired driver on Interstate 70. As he started towards the interstate dispatch advised him that the vehicle had exited the highway and pulled into a gas station. As he pulled into the gas station Sergeant Tracy saw Agent Shannon and Bulin standing in front of their vehicles having a conversation. Sergeant Tracy walked over, and Agent Shannon

handed him Bulin's Ohio Identification Card. After a short conversation with Agent Shannon and then Bulin, he placed Bulin in the back of his patrol car. He contacted the Belmont County Sheriff's Office and ran Bulin's record through LEADS, finding multiple warrants for his arrest.

{¶16} Regarding Bulin's appearance, Sergeant Tracy testified: "Just pulling into the gas station, I was under the impression that it was highly likely that he was impaired. He was leaning on his vehicle. When he approached me, without even opening his mouth, there was an extremely strong odor of an alcoholic beverage. Through my contact with him, you know, glassy eyes, the blood-shot eyes; had extreme difficulty with his balance." He also stated that Bulin was continually leaning on things, including his own vehicle, Sergeant Tracy's patrol car, and Sergeant Tracy.

{¶17} After a few minutes, Deputy Stewart arrived. The deputy spoke with him and Agent Shannon about their observations, and then asked him to perform and video tape the field sobriety test. Sergeant Tracy testified that he explained and performed the horizontal gaze nystagmus test on Bulin. He observed all six clues, which indicated a high likelihood that Bulin would test over the legal limit. Sergeant Tracy administered the other two field sobriety tests, and subsequently told Deputy Stewart that if this were his arrest, he would place Bulin under arrest for OVI.

{¶18} When asked to characterize Bulin's impairment, Sergeant Tracy stated that Bulin was moody, staggered, and slurred his speech. Bulin was smiling and cooperative at one point and then mean and cursing almost a second later.

{¶19} Sergeant Tracy testified that he did not arrest Bulin because the Belmont County Sheriff's Office was available and he was required to make a contact with the agency of jurisdiction before he made an arrest. Bulin had been in the back of Sergeant Tracy's vehicle for safety reasons; Bulin had been leaning on his vehicle for support, and Sergeant Tracy wanted to get him away from all the onlookers.

{¶20} On cross, Sergeant Tracy explained that he administered the field tests between two parking spaces in front of the building. He had not pulled all the way into a parking space, so he performed the tests in the area in front of his vehicle on the side of

the building with the gas pumps. He testified that the roads were wet that day and during the field sobriety test, it began to precipitate. He stated that Bulin made several comments during the test about the road being wet. Sergeant Tracy agreed that he could have performed the test in the covered area by the gas pumps, but he said there was no reason he did not give the test there, it was just where he had his vehicle.

**{¶21}** The court overruled Bulin's motion to dismiss. After several pre-trial motions, including a sustained motion for new counsel, Bulin waived a jury trial. At the start of the bench trial, Bulin made an oral motion to represent himself with his former attorney remaining in the courtroom as stand-by counsel, which the court sustained. The court then advised Bulin of the possible penalties of conviction. Bulin then stated that he had broken the law to determine if the person following him was a law enforcement official and that he had been afraid for his life. Bulin made an oral motion to continue to have time to prepare for the trial, which was denied. The trial court allowed Bulin to explain his side of the events and give him the opportunity to file a brief after the trial.

**{¶22}** Agent Shannon then testified, mainly restating her testimony from the suppression hearing. She stated that she was going to drop off evidence on her way home when she encountered Bulin, but she was still on duty. She said that she saw "the defendant's vehicle weaving in and out of the lane. He was driving left of center; driving off into the berm. Also, his speed was inconsistent." She stated that at the gas station, she had observed Bulin stumbling around and falling into his vehicle. She said that when she spoke with Bulin, his speech was very slurred and he said he had been drinking a lot.

**{¶23}** Agent Shannon then described her training as a Liquor Enforcement Agent. She trained for six months in the police training academy and had fifteen weeks of field training, specializing in underage drinking and intoxication violations. She agreed that she is able to determine whether further investigation is warranted into the question of whether an individual is driving under the influence. She then stated that her opinion was that Bulin was impaired.

**{¶24}** Sergeant Tracy mainly restated his testimony from the suppression hearing. He added that when he spoke with Bulin he noticed a strong odor of alcohol and

observed that Bulin had glassy eyes, trouble with his balance, slurred his speech a little bit, and was very talkative and cooperative. He also stated that Bulin made a comment that he had been gambling and drinking for two days straight.

{¶25} Sergeant Tracy explained that he performed the three standard field sobriety tests that he was trained to do. First, he performed the HGN test and observed six out of six clues. Next, he performed the walk-and-turn test and observed multiple clues. He said the only particular thing he remembered from that test was that Bulin jumped over a small puddle of water at one point. Last, he performed the one-leg stand and observed multiple clues, although Sergeant Tracy thought Bulin did not complete that test. Subsequently, Deputy Stewart asked his opinion, and Sergeant Tracy said that Bulin was an impaired driver and if it were his arrest, he would definitely place him under arrest for OVI.

{¶26} Sergeant Tracy stated that he had performed close to six hundred DUI arrests, and had been involved with close to one thousand five hundred DUI arrests. When asked if he had an opinion whether Bulin's driving was "appreciably impaired," Sergeant Tracy replied, "Absolutely. That's—my opinion is just that, that he was, you know, impaired by alcoholic substances?"

{¶27} On cross, Sergeant Tracy confirmed that upon his arrival on the scene when he saw that Bulin was unsteady on his feet, he considered that Bulin was standing out in the cold for a long period of time without proper clothing to keep him warm enough to stand still during the weather conditions. He also acknowledged that he thought Bulin had made a comment to that effect. Sergeant Tracy also confirmed that he was familiar with the National Highway Traffic Safety Administration which set the testing standards for field sobriety tests. Regarding the walk-and-turn test, Sergeant Tracy admitted that he probably should have administered the test underneath the covered area, but he believed the test complied with NHTSA standards.

{¶28} The State then stipulated that Sergeant Tracy was on private property when he performed the field sobriety tests at the direction of the Sheriff's Department, which had jurisdiction over all private property in Belmont County.

{¶29} Deputy Randy Stewart likewise mainly restated his testimony from the suppression hearing. Additionally, he stated that he had been with the Sheriff's Department full time for about five years and part time for fourteen years. He stated that he observed the field sobriety tests, but he stood off to the side and could not see Bulin's eyes. He said that Bulin appeared to have difficulty completing the tests due to balance issues. Prior to the test, he observed that Bulin's eyes were blood-shot and he slurred his speech.

{¶30} Deputy Stewart confirmed that after he ran Bulin's record and discovered the two prior felony convictions for OVI, he requested that certified copies of the convictions be obtained. The State then handed Deputy Stewart the State's Exhibits 1 and 2, which the deputy identified as certified copies from the Stark County Court of Common Pleas, Case No. 2003-CR-0105 and Case No. 205-CR-098 [sic], which were both felony convictions for OVI. He also confirmed that those case numbers matched his initial report that Bulin had two prior felony convictions. The State then moved to admit State's Exhibits 1 and 2 as the certified copies of Bulin's prior convictions for OVI.

{¶31} Bulin's stand-by counsel then objected to the State's motion to admit Exhibit 1 on the grounds that it was a post-sentence entry about revoking his community control sanctions, not the certified record of conviction, and therefore, inadmissible to prove a prior conviction. The State responded that it was a certified copy and even if the court decided it was not the proper certification, a second felony conviction in Ohio was still a third degree felony. The court admitted State's Exhibit 2 and took State's Exhibit 1 under consideration.

{¶32} Bulin's stand-by counsel then moved for a directed verdict of acquittal, arguing that the legal standard under the Revised Code Section Bulin was charged under was that his ability to drive was "appreciably impaired." Counsel contended that neither of the officers stated that Bulin's ability was appreciably impaired, only impaired; therefore, the State had failed to carry its burden. The State argued that it asked if Bulin's driving was appreciably impaired, to which the officers responded affirmatively and said it was impaired, and the fact that they left out "appreciably" was of no consequence. The

court overruled the motion, stating it was not sufficient in and of itself to warrant a judgment of acquittal. After conferring with his stand-by counsel, Bulin decided not to testify.

{¶33} At the close of the trial, the court gave Bulin sixty days to submit a brief and fourteen days for the State to respond. Bulin's pro-se brief alleged error in the administration of the walk-and-turn test. Further, he argued that it was unlawful for Deputy Stewart to transport him to the highway patrol post without arresting him and reading him his rights. Bulin also contended that the State could not prove that he was guilty beyond a reasonable doubt. Bulin then moved the court to dismiss the charges.

{¶34} The court found Bulin guilty of driving under the influence, pursuant to R.C. 4511.19(A)(1)(a)(G)(1)(e)(i), finding in pertinent part:

{¶35} "The Court finds that the evidence, in its totality, demonstrates that the defendant's driving was appreciably impaired. Testing established fluctuations in speed as well as weaving in and out of lanes. Defendant's breath, eyes, and speech, evidenced the influence of alcohol according to three professional officers trained for the purpose of detecting impaired drivers. Based upon the testimony of these State witnesses as well as the defendant's own admissions concerning his having consumed alcohol, the Court concludes that the nervous system, brain or muscles of the defendant were impaired, to a noticeable degree, his ability to operate the vehicle, and that he was driving under the influence of alcohol."

{¶36} The trial court also found that based upon the certified copies of judgment entries admitted at trial, Bulin had been previously convicted of the two felony OVI offenses averred in the indictment.

{¶37} Following a sentencing hearing the trial court sentenced Bulin to a three year prison term with one hundred twenty days of the term mandatory pursuant to R.C. 2929.13(G)(2), a fine of $1,350, and a five-year driver's license suspension.

### Motion to Suppress

{¶38} In his first of three assignments of error, Bulin asserts:

{¶39} "The court erred in overruling the suppression motion."

{¶40} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8. Accepting these facts as true, the appellate court conducts a de novo review of whether the facts satisfy the applicable legal standards at issue in the appeal. Id.

{¶41} Bulin argues that the three officers who performed the stop and arrest acted improperly and, therefore, the trial court should have suppressed the evidence obtained during the stop and arrest. He claims the officers acted improperly for four reasons.

{¶42} First, Bulin contends that since Agent Shannon believed Bulin was impaired by alcohol, she should have initiated a traffic stop. Agent Shannon testified that as a member of the Ohio Investigative Unit, she lacked authority to conduct a traffic stop. See *State v. Droste* (1998), 83 Ohio St.3d 36, 39, 697 N.E.2d 620 (holding that liquor agents do not have authority to conduct a traffic stop if agent was not in the process of investigating an R.C. Title 43 offense, no state or local law enforcement officers requested assistance, and no emergency existed); R.C. 5502.14. Instead, Agent Shannon contacted the highway patrol dispatcher and informed them that she was following an apparently impaired driver. Deputy Stewart and Sergeant Tracy both corroborated her testimony by testifying that they received a call to respond to the situation.

{¶43} Second, Bulin argues that Sergeant Tracy lacked authority to perform field sobriety tests and arrest Bulin because the encounter occurred on private property. Both officers testified that because Deputy Stewart had jurisdiction over the private property where Sergeant Tracy administered the field sobriety tests, he did so at Deputy Stewart's direction. In an analogous situation, the Ninth District held that a search of a residence

was valid even though the officers executing the warrant were outside of their territorial jurisdiction because they were accompanied the entire time by officers with jurisdiction. *State v. Miller* (Jan. 22, 1986), 9th Dist. No. 12198. Sergeant Tracy conducted the field sobriety tests under the authority of Deputy Stewart who was present throughout the administration of the tests, standing off to the side to observe. Consistent with *Miller*, the field sobriety tests were valid. Furthermore, Deputy Stewart testified that he placed Bulin under arrest, not Sergeant Tracy.

**{¶44}** Third, Bulin alleges that Sergeant Tracy improperly performed the walk-and-turn test because he administered the test in front of a water puddle, contrary to NHTSA standards. R.C. 4511.19(D)(4)(b) provides in pertinent part, that evidence and testimony regarding the results of a field sobriety test may be presented "if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration."

**{¶45}** However, Bulin did not challenge the administration of the walk-and-turn test in his suppression motion. Instead, he moved: "Fro [sic] an Order dismissing the charge contained in the Indictment, as the arrest was made on private property, or, in the alternative, suppressing any and all evidence obtained, as there was no probable cause to stop and/or arrest defendant."

**{¶46}** The Ohio Supreme Court has held that in a motion to suppress "the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Shindler* (1994), 70 Ohio St.3d 54, 636 N.E.2d 319, at syllabus (construing and following Crim.R. 47 and *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889). Once the defendant presents a sufficient basis for the motion to suppress, the burden shifts to the state to demonstrate substantial compliance with the applicable testing standards. *State v. Phillips*, 7th Dist. No. 08-MO-6, 2010-Ohio-1547, at ¶16. "By requiring the defendant to

state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived." *Shindler* at 58. Bulin's motion to suppress did not state any factual basis or argument that the walk-and-turn test was improperly administered, thus, the issue is waived.

**{¶47}** Even if this court would have determined that Sergeant Tracy improperly administered the walk-and-turn test and the trial court should have suppressed the results from this test, Bulin only alleges error in the single test. Thus, the one-leg stand test and HGN test results would still be admissible to support a finding of probable cause. Furthermore, the Ohio Supreme Court has held that probable cause to arrest does not need to be based on the results of field sobriety tests, and probable cause can be found even where the test results must be suppressed. *State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (superseded by statute on other grounds).

**{¶48}** Fourth, Bulin contends that since Deputy Stewart did not observe the erratic driving or perform the field sobriety tests, he lacked probable cause to arrest Bulin. In general, an officer may not make a warrantless arrest for a misdemeanor offense if the officer did not observe the offense occurring. *State v. Henderson* (1990), 51 Ohio St.3d 54, 56, 554 N.E.2d 104. However, an exception exists where "the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol or drugs." Id., citing *Oregon v. Szakovits* (1972), 32 Ohio St.2d 271, 61 O.O.2d 496, 291 N.E.2d 742. The Ohio Supreme Court has held that the legal standard for determining if an officer had probable cause to arrest for OVI is "whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *Homan* at 427. In making this determination, courts must examine the totality of facts and circumstances surrounding the arrest. Id.

**{¶49}** For example, in *Droste*, supra, two on-duty liquor control agents observed a vehicle driving erratically on the highway. Id. at 36. After the liquor agents radioed in

their observations, the driver stopped at a traffic light and the agents received a communication to stop the vehicle. Id. When the agents approached the vehicle, they observed indicia of intoxication, and the driver admitted he had been drinking. Id. at 37. The liquor agents then arrested the driver for underage drinking. Id. Meanwhile, an officer with jurisdiction arrived; the liquor agents informed the officer of their observations and one of the liquor agents performed a field sobriety test under the officer's observations. Id. The officer then arrested the driver for OVI. Id. The court determined there was no evidence to support that the request for assistance came from state or local law enforcement and concluded that the liquor agents violated their statutory authority. Id. at 39-40. However, the court held that the officer had probable cause to arrest the driver based on the liquor agents' observations of the erratic driving as told to the arresting officer and the arresting officer's own observations. Id. at 40.

{¶50} Similarly, Deputy Stewart arrived on the scene after the vehicle had come to a stop and did not observe the erratic driving. Agent Shannon, an on-duty liquor agent without jurisdiction to perform a traffic stop, saw Bulin driving erratically and followed him when he pulled off the highway. Agent Shannon did not stop Bulin. When Deputy Stewart arrived on the scene, Agent Shannon told him what she had observed prior to his arrival. She observed Bulin's vehicle swerve into the berm several times. At the gas station, she observed that Bulin had glassy, blood-shot eyes, slurred his speech, could barely stand up straight, and that she smelled an odor of alcohol on his breath. She also testified that Bulin told her that he was "really drunk." The information Deputy Stewart received from Agent Shannon, a trained law enforcement officer, established that Bulin was operating the vehicle and provided evidence of impaired driving. Therefore, the fact that Deputy Stewart did not witness Bulin's erratic driving does not preclude a valid OVI arrest.

{¶51} Next, Bulin contends that Deputy Stewart lacked probable cause because he did not administer the field sobriety tests. "Information supplied by officers or agencies engaged in a common investigation with an arresting officer may be used to establish probable cause for a warrantless arrest." *Henderson*, supra, at syllabus. "So long as 'the

law enforcement system as a whole has complied with the Fourth Amendment' and possesses facts adding up to probable cause, the arrest will be valid even though the arresting officer alone does not possess these facts." Id. at 57, quoting 1 LaFave & Israel, Criminal Procedure (1984), 208, Section 3.3(e).

{¶52} When Deputy Stewart arrived at the gas station, Sergeant Tracy related that he had been dispatched while Bulin was still driving on the highway, and that he observed a strong odor of alcohol from Bulin, glassy and blood-shot eyes, and extreme difficulty with balance. After Sergeant Tracy performed the field sobriety tests, he further informed Deputy Stewart that Bulin was impaired. As officers dispatched to respond to the same offense, Sergeant Tracy and Deputy Stewart were engaged in a common investigation; therefore, Sergeant Tracy's observations may be considered in determining whether Deputy Stewart had probable cause to arrest for OVI.

{¶53} Finally, beyond relying on the observations of Sergeant Tracy and Agent Shannon, Deputy Stewart testified that he observed that Bulin appeared to be impaired during the field sobriety tests, and that Bulin had blood-shot eyes, slurred speech, and the smell of an odor of alcohol. Deputy Stewart also testified that Bulin was falling asleep in the back of his vehicle and had told him that he had been drinking at the track.

{¶54} The totality of facts and circumstances surrounding the arrest gave Deputy Stewart sufficient information from trustworthy sources to cause a prudent person to believe Bulin was driving under the influence. Therefore, Deputy Stewart had probable cause to arrest Bulin for OVI. See *Homan*, supra, at 427 (erratic driving, red and glassy eyes, odor of alcohol on breath, and admission of consumption of alcoholic beverages established probable cause to arrest). See also *State v. Kirby* (Sept. 28, 2001), 6th Dist. No. OT-00-047 (observation of appellant's vehicle weaving in lane, strong odor of alcohol, red and glassy eyes, slurred speech, and admission of consumption of alcoholic beverages established probable cause to arrest). Accordingly, Bulin's first assignment of error is meritless.

### Sufficiency of the Evidence

{¶55} In his second assignment of error, Bulin asserts:

**{¶56}** "The court erred in finding the appellant under the influence where the evidence was insufficient to prove that his ability to operate his vehicle was noticeably impaired."

**{¶57}** The test of sufficient evidence is "whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717*.* The court does not examine the credibility of the witnesses, nor does it weigh the evidence in this process. Id.; *State v. Goff* (1998), 82 Ohio St.3d 123, 139, 694 N.E.2d 916. The trial court's decision should only be reversed if the "appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (superseded by state constitutional amendment on other grounds). Whether the prosecution presented sufficient evidence is a question of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. An appellate court's review of the sufficiency of the evidence must "assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390 (Cook, J., concurring).

**{¶58}** Bulin was convicted of violating 4511.19(A)(1)(a), which provides:

**{¶59}** "(A)(1) No person shall operate any vehicle, * * * within this state, if, at the time of the operation, any of the following apply:

**{¶60}** "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."

**{¶61}** Under this section, the state "need not establish a threshold level of alcohol concentration in the defendant's body. It must, however, prove that the defendant operated a vehicle when his faculties were appreciably impaired by the consumption of alcohol." *State v. Lowman* (1992), 82 Ohio App.3d 831, 836, 613 N.E.2d 692. This court has stated that the defendant's behavior is a "primary consideration" in this determination. *State v. Smith*, 7th Dist. No. 05 MA 219, 2007-Ohio-3182, at ¶76.

**{¶62}** Agent Shannon testified that Bulin was weaving on the highway and driving left of center, that his speech was very slurred, he was stumbling and falling into his vehicle, and that Bulin admitted he had been drinking a lot. She opined that Bulin was impaired. Deputy Stewart testified that Bulin slurred his speech, his eyes were bloodshot, and that Bulin had balance issues while performing the field sobriety tests. Sergeant Tracy testified that he smelled a "real strong odor" of alcohol and observed that Bulin had glassy eyes, slurred his speech a little, and had balance problems. He said that Bulin made a comment that he had been drinking and gambling for two days straight and was trying to get home. When Sergeant Tracy administered the field sobriety tests, he observed all six clues on the HGN test, "multiple clues" on the walk-and-turn test and multiple clues on the one-leg stand test, although he stated that he thought Bulin did not complete that test. When asked his opinion as to whether Bulin's driving was appreciably impaired by the consumption of alcohol, Sergeant Tracy stated, "Absolutely. That's—my opinion is just that, that he was, you know, impaired by alcoholic substances?"

**{¶63}** Sufficient evidence supports Bulin's conviction for OVI. At the trial, none of the officers explicitly stated that Bulin was "noticeably" or "appreciably" impaired. However, the officers' failure to use this exact phrase does not render the conviction invalid when the trial court could have inferred that Bulin was appreciably impaired from the officers' descriptions of Bulin's behavior and appearance. See *Lowman*, supra, at 836. Accordingly, Bulin's second assignment of error is meritless.

### Prior Convictions

**{¶64}** In his third and final assignment of error, Bulin asserts:

**{¶65}** "The court erred in overruling the motion of the appellant to exclude the evidence of prior convictions offered by the state where that evidence was improper and insufficient."

**{¶66}** "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, at ¶43, citing *State v. Issa* (2001), 93 Ohio St.3d 49, 64,

752 N.E.2d 904. An abuse of discretion means more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Noling* at ¶43, citing *State v. Barnes* (2002), 94 Ohio St.3d 21, 23, 759 N.E.2d 1240.

**{¶67}** Pursuant to R.C. 4511.19(G)(1)(e), a previous felony OVI conviction elevates an offender's charge to a third degree felony. When a prior conviction elevates the degree of the crime charged, the prior conviction is an element of the crime, and the state has the burden to prove the prior conviction beyond a reasonable doubt. See *State v. Allen* (1987), 29 Ohio St.3d 53, 54, 506 N.E.2d 199. The form that proof must take is defined in R.C. 2945.75(B)(1) which provides:

**{¶68}** "Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction."

**{¶69}** Further, Crim.R. 32(C) provides:

**{¶70}** "A judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence. Multiple judgments of conviction may be addressed in one judgment entry. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk."

**{¶71}** The State had the burden to prove that Bulin had one prior conviction beyond a reasonable doubt. The State introduced two exhibits to prove Bulin's two prior felony OVI convictions. State's Exhibit 2 is a certified copy of the judgment entry from Bulin's 2003 felony OVI conviction. This judgment entry sets forth Bulin's plea, the court's findings, and the sentence. This judgment entry was signed by the judge and was journalized. Deputy Stewart identified State's Exhibit 1 and 2 as certified copies of felony OVI convictions with case numbers that matched his initial report of Bulin's two prior felony convictions. Therefore, State's Exhibit 2 comports with the requirements of R.C. 2945.75(B)(1) to prove Bulin's prior felony OVI conviction.

**{¶72}** However, State's Exhibit 1 is a certified copy of a judgment entry revoking Bulin's judicial release and modifying the sentence on his 2005 felony OVI conviction. This judgment entry does not set forth the original sentence imposed on the conviction and the findings upon which the court based Bulin's conviction. Even if the trial court improperly admitted State's Exhibit 1, it is harmless error, because the State properly proved that Bulin had a prior felony OVI conviction in 2003 via State's Exhibit 2. Accordingly, Bulin's third assignment of error is meritless.

**{¶73}** In conclusion, Bulin's three assignments of error are meritless. First, the trial court did not err in overruling the suppression motion. Agent Shannon did not have jurisdiction to perform a traffic stop but Sergeant Tracy administered the field sobriety tests at the direction and in the presence of an officer who did have jurisdiction. And because Bulin did not challenge the administration of the field sobriety test in his suppression motion, he cannot raise the issue for the first time on appeal. Second, the State presented sufficient evidence at trial to support Bulin's conviction for OVI. Deputy Stewart could properly rely on the observations of Agent Shannon and Sergeant Tracy to establish probable cause to arrest, and the totality of the facts and circumstances support a finding of probable cause to arrest. Finally, because the State properly proved that Bulin had one prior felony OVI conviction, even if the State's evidence of the second prior conviction was inadmissible, there was no material prejudice since one prior conviction can support the specification. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Donofrio, J., concurs.